# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CYNTHIA DENISE DERICO,**

   **Plaintiff,**

**vs.**                                          **CASE NO. 4:20-CV-375-WS-MAF**

**ANDREW W. SAUL, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**

   **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

   This Social Security case was referred to the Undersigned, upon consent of the parties by United States District Judge, William Stafford. ECF Nos. 15, 16. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act. After careful consideration of the record, the decision of the Commissioner is AFFIRMED.

## I.    Procedural History

   On or about July 26, 2018, Plaintiff, Cynthia Denise Derico, filed an application for a period of disability and DIB benefits, alleging disability

beginning July 15, 2014. Tr. 147, 187.[1] It appears that Plaintiff initially alleged that she became disabled because of "left side . . . nerve damage . . . [and] numb[ness] . . . with pain" when walking or standing; "severe lower back pain sometimes"; "acid reflux"; feet and ankle swelling with "severe pain"; "polyps inside [her] stomach"; a painful "hernia inside the top part of [her] stomach"; and "two fibroid tumors behind [her] uterus," which cause pain. Tr. 187-189, 202-204.

The agency initially denied Plaintiff's claim on August 14, 2018, and upon reconsideration on February 6, 2019. Tr. 89-100. Plaintiff requested a hearing on April 5, 2019. ECF No. 101-102. On September 30, 2019, Administrative Law Judge (ALJ), Alisa M. Tapia, held a hearing in Tallahassee, Florida. Tr. 37-66. Plaintiff was not represented by counsel and waived her right to representation. Tr. 40. Plaintiff and Stephanie Malone, an impartial vocational expert (VE) testified at the hearing. Tr. 43-60 (Plaintiff's testimony); Tr. 62-65 (Malone's testimony); Tr. 250-51 (Malone's resume). Also, during the hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims. Tr. 42.

On October 29, 2019, the ALJ issued a decision denying Plaintiff's

---

[1] Citations to the transcript/administrative record, ECF No. 13, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

application for benefits. Tr. 22-36. The ALJ considered the entire record, including Plaintiff's medical records and testimony, which the ALJ found was "not entirely consistent with the medical evidence and other evidence." Tr. 27. Plaintiff requested a Review of Hearing Decision on November 28, 2019. Tr. 141. On May 27, 2020, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff filed her Complaint with this Court on July 6, 2020. ECF No. 1. Defendant filed an Answer on March 1, 2021. ECF No 12. The parties filed memoranda of law, which have been considered. ECF Nos. 17, 18.

## II.    Plaintiff's Claims

Plaintiff, proceeding *pro se*, claims in her Complaint[2] that the Commissioner's decision is not supported by substantial record evidence because she has a severe pinched nerve, arthritis in her lower back, lower back pain, and pain radiating from her left side all the way down her leg. ECF No. 1, pp. 9-10. Plaintiff also claims that this pain occurs when she is sitting, standing, or walking and that medications do not alleviate the pain. Id.

In her memorandum, Plaintiff reiterates her claims. ECF No. 17. According to Plaintiff, she has facet arthritis that causes "severe" pain down

---

[2] Plaintiff includes as exhibits the ALJ's decision, dated October 29, 2019; a medical record from North Florida Medical Centers, Inc., dated January 22, 2020; and the Notice of Appeals Council Action, dated May 27, 2020. ECF No. 1, pp. 19-65.

her left side from the hip down through her leg and in the lower part of her back. Id. Plaintiff repeats her claims that she cannot stand for long periods of time, feels numbness on her left side, and has nerve damage. Id. When walking or standing, if she does not sit down, her left side and hip feels worse. Id. Plaintiff claims that she suffers from pain day and night; and pain medications and muscle relaxers do not help. Id.

The Commissioner argues that there is substantial evidence to support the decision finding that Plaintiff failed to prove she was disabled and, the evidence submitted by Plaintiff for her treatment on November 18, 2019, was not related to the relevant period (July 15, 2014, through June 30, 2017) and would not affect the ALJ's decision because Plaintiff "initially alleged disability based on a hernia on [the] top part of [the] stomach, two fibroid tumors, sinus problems, and allergies." ECF No. 18.

## III.    Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a

preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[3]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-224 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if she is under a disability prior to the expiration of her insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

---

[4] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating she cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir.

---

examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. <u>See</u> 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. <u>See</u> <u>Battle v. Astrue</u>, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater

weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A] medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight

to the opinion of the treating physician must be supported by substantial evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. <u>Phillips</u>, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." <u>Hillsman v. Bowen</u>, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." <u>Lewis</u>, 125 F.3d at 1440; <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991) (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's

impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986). However, if the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." <u>Hunter v. Soc. Sec. Admin. Comm'r</u>, 808 F.3d 818, 823 (11th Cir. 2015).

## IV. Legal Analysis

### A. <u>Findings of the Administrative Law Judge (ALJ)</u>

The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff "had the following severe impairments: obesity and uterine fibroid"; and these "impairments significantly limited the ability to perform basic work activities as required by SSR 85-28." Tr. 24. The ALJ also found that Plaintiff's "hyperlipidemia, gastroesophageal reflux disease, and allergies" were "non-severe impairments." <u>Id</u>. Plaintiff does not appear to contest this finding.

The ALJ determined the denial of benefits was warranted because Plaintiff has "the residual functional capacity to perform medium work . . . except, due to pain, she could understand, retain, and carry out simple instructions and can consistently and usefully perform routine tasks on a sustained basis with normal supervision." Tr. 25. The ALJ found that Plaintiff

"was capable of performing past relevant work as a production assembler" because the "work did not require the performance of work-related activities precluded by . . . [her] residual functional capacity." Tr. 30. Additionally, because the ALJ found that Plaintiff is capable of performing other jobs in the national economy, "[a] finding of 'not disabled' is . . . appropriate." Tr. 31. These determinations are contested by Plaintiff.

The ALJ made several other findings. Plaintiff last met the insured status requirements of the SSA on June 30, 2017, and did not engage in substantial gainful activity during the period from her alleged onset date of July 15, 2014, through June 30, 2017. Tr. 24. Plaintiff does "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. Specifically, "[t]here [was] no indication that . . . [Plaintiff's] obesity, alone or in combination with any other impairment, has given rise to a condition of listing-level severity. There is no indication that . . . [her] uterine fibroid contained carcinoma or sarcoma." Tr. 25.

The ALJ found that although Plaintiff alleged years of back pain, "the medical record does not reflect related complaints until several months after she filed her application for disability benefits and well over a year after the expiration of her date last insured." Tr. 25. No abnormalities were noted in a

November 2018 physical examination and there was no costovertebral tenderness. Id. Plaintiff "was assessed with acute bilateral low back pain with left-sided sciatica and a lumbar spine x-ray was ordered." Id. The lumbar spine x-rays "showed no evidence of acute osseous pathology"; and an MRI of the same area "showed mild degenerative changes without disc protrusion or nerve root compression." Id. Still, the ALJ summarized Plaintiff's medical records as they might relate to her back condition and determined "the record [did] not establish a back impairment that cause significant limitations or could be expected to caused ongoing significant limitations prior to the date last insured." Id. Plaintiff challenges this finding.

In determining that Plaintiff has "the residual functional capacity to perform medium work," the ALJ noted that Plaintiff "has the above residual functional capacity assessment, which is supported by the lack of ongoing complaints, normal physical examination findings, and routine medication management during this period." Tr. 29. The ALJ also determined Plaintiff "is capable of performing past relevant work" because her prior position involved unskilled work or semi-skilled work performed at a "light" exertional level or at the "sedentary exertional level." Tr. 30. Not only was Plaintiff able to perform past relevant work, the ALJ determined that there were other jobs existing in the national economy that she is able to perform. Tr. 31. This

determination was due following the consideration of the VE's testimony given Plaintiff's "age, education, work experience, and residual functional capacity." Id. In particular, the VE testified that considering all factors, Plaintiff is able to perform the requirements of unskilled medium "such as dining room attendant . . . dietary aid . . . laundry worker" and "unskilled light duty jobs . . . [in] the light exertional range . . . such as marker . . . mail clerk . . . and garment sorter." Id. Finally, the ALJ determined that Plaintiff "was not under a disability as defined in the Social Security Act, at any time from July 15, 2014, the alleged onset date, through June 30, 2017." Tr. 32.

B. Substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

According to Plaintiff, she suffers from severe pain and numbness due to her arthritis and a pinched nerve. ECF Nos. 1, 17. Plaintiff maintains that the pain is chronic whether she is sitting, standing, or walking; therefore, she is disabled. Plaintiff claims that she had tests for nerve damage and arthritis before the last test on November 18, 2019. ECF No. 17, p. 2-3. Because Plaintiff does not contest the evaluation of her other conditions, they are not at issue. Therefore, the Court has conducted an independent review of Plaintiff's medical records to determine whether there was sufficient evidence to support the ALJ's decision that Plaintiff is not disabled as it relates to arthritis, a pinched nerve, and back pain.

Plaintiff's primary care provider, Elaine A. Larkins, ARNP, regularly treated Plaintiff for several years beginning in 2007. Tr. 262-64. From November 2007 through November 7, 2018, Plaintiff presented for "well" visits and various conditions including gynecological problems, irritable bowel syndrome, sinusitis, obesity, but none related to arthritis, pinched nerves, back pain, pain going through the leg, or numbness. Tr. 243-45, 262-64, 271-72, 274, 285-88, 293-96, 404-05, 407-10. Plaintiff's medical records through November 7, 2018, indicate that her musculoskeletal system and gait were normal; she had normal strength or full range of motion in her upper and lower extremities; and she denied any swelling in the legs, tingling/numbness, or any gait abnormality. Id. Plaintiff was prescribed Percocet for the pain related to the partial hysterectomy performed in September 2018.[5] By November 19, 2018, Plaintiff stated she was doing well; and the pain was much better. Tr. 351.

The first mention in the medical record relating to Plaintiff's back pain and sciatica appears three months after her disability claims were initially denied, on November 15, 2018, when she presented for "follow-up labs." ECF No. 401. Plaintiff was assessed with several issues including "obesity

---

[5] For this medical condition, Plaintiff was treated by North Florida Women's Care. See Tr. 253-54, 331, 335-37, 341-42, 351-52, 354-56, 360-62, 365-67, 370.

due to excess calories"[6] and "[a]cute bilateral low back pain with left-sided sciatica." Id. Nonetheless, Plaintiff was assessed as having "full range of motion." Id. In fact, Plaintiff's care plan included increasing exercise tolerance and exercising regularly. Tr. 402. However, on November 29, during a follow-up visit, Plaintiff denied "muscle aches, leg cramps, painful joints, back problems . . . gait abnormality . . . [and any] tingling/numbness." Tr. 398-99. During both November visits, Plaintiff had "full range of motion," "no edema" in the extremities, a "normal" gait, and "normal" motor strength in the upper and lower extremities. Tr. 399, 401.

There are no medical records available after November 29, 2018, until February 28, 2019, which was three weeks after the agency denied Plaintiff's disability benefits upon reconsideration. Tr. 394. Plaintiff returned to her primary care physician alleging that her back pain began three to four years earlier -- in 2014; and it had become increasingly worse. Id. Plaintiff reported that the pain was severe and constant and that ambulation and physical activities aggravated the pain for her. Id. Plaintiff also reported numbness on the left side of her leg. Id. Still, the medical record indicates no edema in the extremities, normal gait, and normal motor strength in the upper and lower

---

[6] Plaintiff's morbid obesity diagnosis first appears in the record on July 28, 2011. Tr. 264.

extremities. Id. An x-ray was ordered. Tr. 395. The x-ray report on March 22, 2019, indicated: "[f]ive views of the lumbar spine [were] negative for pars defects, Disc spaces are preserved. No fractures [were] identified. Sacroiliac joints [were unremarkable . . . [and there was] no evidence of acute osseous pathology." Tr. 381.

On March 29, 2019, Plaintiff returned complaining of hip pain. Tr. 391. Again, Plaintiff's gait was normal; and she had normal motor strength in her upper and lower extremities although she complained of lumbar pain with motion and left side sciatica. Tr. 391-92. On April 1, 2019, Plaintiff obtained an MRI order for her back. Tr. 388. She denied any swelling in her extremities. Tr. 389. On April 3, 2019, Plaintiff presented to Tallahassee Diagnostic Imaging for the MRI, which determined:

> [n]ormal lumbar vertebral body height and alignment. No subluxation or compression deformity. Normal conus. L2-L3 and L3-L4 exhibit no canal or foraminal stenosis. Mild facet arthritis and distribution at L4-5 without spinal canal narrowing. Mild fact arthritis and subtle annular bulging at L5-S1 . . . mild degenerative changes without disc protrusion or nerve root compression. Tr. 379.

On April 18, 2019, during the follow-up visit to review the MRI results, Plaintiff had a normal gait and normal motor strength in her upper and lower extremities. Tr. 385. Plaintiff also reported being sexually active and denied any sexual problems, muscle aches, leg cramps, or painful joints, but

complained of sciatica on the left side and asked for a referral to We Care For. Tr. 386, 390. At each medical visit, Plaintiff was "alert, oriented"; and her cognitive function was "intact."

On November 18, 2019, three weeks after the ALJ entered her decision, Plaintiff went to Tallahassee Memorial Hospital for back and left side pain. Tr. 12. Only the homecare instructions from that examination are part of the record, which includes educational materials on "lumbosacral radiculopathy." Tr. 12-17. Plaintiff was provided with hydrocodone and diazepam and discharged with prescriptions for diclofenac, lidocaine topical, and prednisone. Tr. 15-16. Plaintiff was directed to continue taking her prior prescription for Flexeril. Tr. 16-17.

Finally, on January 22, 2020, Plaintiff returned to her primary care physician complaining of nerve pain in both legs. Tr. 7. Plaintiff was diagnosed with "osteoarthritis of the lumbar spine, unspecified spinal osteoarthritis complication status" and "acute bilateral low back pain with left-sided sciatica." Tr. 8-9.

Here, it is apparent that Plaintiff's failure to report any symptoms of the alleged back pain, arthritis, pinched nerve until more than one year after her date last insured effected the outcome of her application for benefits. Tr. 24-25. The ALJ properly determined that Plaintiff's medical record does not

reflect her back pain until several months after she filed her application for disability benefits and more than one year after the expiration of her date last insured. Tr. 25. There were no abnormalities in any of Plaintiff's physical examinations at any time prior to the date last insured. Id. All medical records indicate that the symptoms related to Plaintiff's arthritis and pinched nerve did not create or cause significant limitations *prior* to the date last insured. Id. In fact, Plaintiff's medical records indicate that her back problems began *after* the agency initially denied her disability claims. Still, the ALJ considered her symptoms in conjunction with all medically determinable impairments when assessing Plaintiff's residual functional capacity. Tr. 25.

In addition to the medical records, the ALJ considered Plaintiff's testimony that she lives with her adult son who is disabled and that her disabled mother, who lives next door, helps her with her son's needs, household chores, shopping, and laundry. Tr. 26. Plaintiff has a driver's license but claimed she cannot drive due to the arthritis and severe pain; therefore, he mother or uncle provide transportation for medical treatment or to pharmacies. Id. Plaintiff testified that she takes Ibuprofen 800 mg and muscle relaxers, which are not effective. Id. Plaintiff testified that she can only stand for approximately five minutes, feels as though her left leg is giving out; and the pain is present whether she is sitting or standing. Id. Her typical

day involves going to the bathroom, taking medicine, keeping her feet elevated to decrease swelling, watching television or sleeping. Id. The ALJ noted that despite Plaintiff's complaints of difficulty with weight bearing and ambulation, Plaintiff "did not appear at the hearing with an assistive device for ambulation." Id. The ALJ concluded that although Plaintiff's "medically determinable impairments could be reasonably expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence." Tr. 27. This seems particularly true given the medical advice given to Plaintiff that she should increase her exercise tolerance and exercise regularly. Tr. 402.

There is substantial evidence to support the ALJ's decision. First, Plaintiff's alleged onset date is not consistent with the symptoms of arthritis and a pinched nerve. The medical records prior to the date last insured do not indicate any complaint relating to arthritis; back pain or radiating pain; difficulty standing, sitting, or walking; or any swelling in the extremities. In fact, as narrated above, the medical records indicate the opposite is true. Plaintiff's medical records repeatedly evidence a "normal" range of motion, a "normal" gait, and "normal" motor strength in her extremities, even in those records documenting her alleged back pain and sciatica.

The ALJ also considered the report of the agency's physician, Sunita Patel, M.D. Tr. 29. On February 5, 2019, Dr. Patel reviewed Plaintiff's medical records from 2016 through September 2018 upon Plaintiff's request for reconsideration. Tr. 77-86. A consultative examination was not required. Tr. 80. None of the records prior to the date last insured documented any back pain or radiating pain, arthritis, or ankle swelling. Tr. 77-83. Dr. Patel concluded Plaintiff was capable of occasionally lifting or carrying 50 pounds or frequently 25 pounds; walking, standing, or sitting for about six hours of an eight-hour workday; and she had no postural or manipulative limitations. Tr. 82. Despite Plaintiff's complaint of nerve damage there was nothing available in the medical record to support her claim. Tr. 78. Plaintiff did not complain to her physician until November 2018.

The ALJ found Dr. Patel's opinion persuasive but still included mental limitations to reflect Plaintiff's allegations of ongoing pain. Ultimately, the ALJ determined that Plaintiff has the above residual functional capacity assessment, which is supported by the lack of ongoing complaints, normal physical examination findings, and routine medication management." Tr. 29.

The ALJ considered the testimony of the VE that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform not only past relevant work but other medium- and light duty jobs in

the national economy such as dining room attendant, dietary aid, laundry worker, marker, mail clerk, and garment sorter. Tr. 31. All the evidence, when considered together, provides substantial evidence to support the ALJ's determination that Plaintiff was not disabled during the relevant period and is capable of performing her past relevant work as well as other jobs in the national economy.

To the extent that Plaintiff would argue that more recent medical records constitute new, material evidence that would properly support a finding of disabled, Plaintiff is mistaken. Under 42 U.S.C. § 405(g) courts may remand an application for benefits back to the Social Security Administration for further action. A claimant must establish that: (1) there is new, noncumulative evidence, (2) the evidence is material, and (3) there is good cause for the failure to submit that evidence at the administrative level. Hunter, 808 F.3d at 821. Evidence is material if it is relevant and probative such that there is a reasonable possibility that it would change the administrative result. See Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1321 (11th Cir. 2015). There are just two records related to her claims that were not considered by the ALJ: (1) the November 18, 2019, visit to Tallahassee Memorial Hospital for back and left side pain and (2) the January 22, 2020, return to her primary care physician for nerve pain in both

legs. Tr. 7, 12. Plaintiff was diagnosed with "osteoarthritis of the lumbar spine, unspecified spinal osteoarthritis complication status" and "acute bilateral low back pain with left-sided sciatica." Tr. 8-9. The ALJ specifically found that there were no severe limitations in Plaintiff's functioning evidenced from the relevant time period. To be materially relevant, the "new" medical reports would have to rebut the ALJ's finding. This is not so. The two evaluations were conducted months after the ALJ's decision and there is no indication the conditions related back to the period that was adjudicated. There is no comment in the reports that Plaintiff suffered from arthritis or back pain prior to 2017.

The record supports the ALJ's finding that Plaintiff was not disabled between July 15, 2014, (the onset date) and June 30, 2017, the date last insured, as a result of back pain or radiating pain, arthritis, or a pinched nerve. The fact that Plaintiff may be disabled after the Commissioner's decision in this case does not make the findings material to an earlier decision. Quite simply, even if the ALJ had this new evidence, there is not a reasonable possibility that the decision would have been different. See 42 U.S.C. § 405(g); see also Hunter, 808 F.3d at 821.

## V. Conclusion

Considering the record, as a whole, the findings of the ALJ are based upon substantial evidence in the record; and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security disability benefits is **AFFIRMED**. The Clerk is **DIRECTED** to enter final judgment for the Defendant.

IN CHAMBERS at Tallahassee, Florida, on May 7, 2021.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**